**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **THE MIAMI VALLEY FAIR** | : | |
| **HOUSING CENTER, INC.** | : | |
| **505 RIVERSIDE DRIVE** | : | **Case No:** |
| **DAYTON, OHIO 45405** | : | **JUDGE:** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CANTERBURY COURT LIMITED** | : | |
| **PARTNERSHIP** | : | |
| **3870 VIRGINIA AVENUE** | : | |
| **CINCINNATI, OHIO 45227** | : | |
| | : | |
| **AND** | : | |
| | : | |
| **EPISCOPAL RETIREMENT** | : | **COMPLAINT** |
| **SERVICES** | : | <u>**JURY TRIAL DEMANDED**</u> |
| **450 N. ELM STREET,** | : | |
| **W. CARROLLTON, OHIO 45449** | : | |
| | : | |
| **Defendants.** | : | |

---

## COMPLAINT

Now comes Plaintiff, Miami Valley Fair Housing Center, Inc., by and through counsel, and hereby state for their Complaint the following:

### INTRODUCTION

**1.** Plaintiff, Miami Valley Fair Housing Center, Inc. ("MVFHC" or "Plaintiff"), brings this action for declaratory, injunctive, and monetary relief against Episcopal Retirement Services and Canterbury Court Limited Partnership (collectively the "Defendants"), for discrimination on the basis of disability in violation of the federal Fair Housing Act

1

("FHA"), 42 U.S.C. § 3601, *et seq.*, and the fair housing laws of the State of Ohio, Ohio Rev. Code § 4112.01, *et seq*. (the "Fair Housing Laws").

2. Under the Fair Housing Laws, housing providers are prohibited from discriminating against persons because of disability, among other protected characteristics.

3. Disability discrimination occurs when a housing provider treats someone differently or denies a reasonable accommodation or modification on the basis on them being an (1) individual with a physical or mental impairment that substantially limits one or more major life activities; (2) individual with a record of such impairment; or (3) individual who is regarded as having such an impairment.

4. MVFHC launched an investigation into Defendants' housing practices and policies after receiving complaints from concerned and disabled residents in the Canterbury Court community.

5. Such investigation discovered significant deficiencies in the way that Canterbury Court agents, employees, and representatives processed reasonable accommodation and modification requests.

6. Defendants' actions, policies, and practices, as described herein, violate the federal Fair Housing Act, 42 U.S.C. § 3601.01, *et seq*.; and the Ohio Fair Housing Law found at Ohio Rev. Code § 4112.02(H), *et seq.*

7. MVFHC also determined that Defendants' employees were not trained on fair housing laws and regulations, including how to process a reasonable accommodation or modification requests.

**8.** Defendants' actions and policies violate the Fair Housing Laws, and their rental practices have harsh consequences for people with disabilities who are routinely denied the full use and quiet enjoyment of their units.

**9.** Defendants negligently trained and supervised their employees, agents, and staff on navigating the Fair Housing Act and processing reasonable accommodation and modification requests. Such negligence directly harmed the Plaintiffs in this matter in an amount to be determined at trial.

## PARTIES

**10.** Plaintiff, The Miami Valley Fair Housing Center, Inc. ("Plaintiff" or "MVFHC"), is a private, non-profit corporation, organized under the laws of the State of Ohio. MVFHC has its principal place of business in Dayton, Montgomery County, Ohio. The mission of MVFHC is to eliminate housing discrimination and ensure equal housing opportunities for all people regionally, in the State of Ohio, and nationally.

**11.** Defendant, Canterbury Court Limited Partnership, is an Ohio Limited Partnership. Canterbury Court maintains its principal place of business in Cincinnati, Ohio. Vicki Martini is the registered agent for Canterbury Court Limited Partnership. At all times herein, Defendant Canterbury Court Limited Partnership owned 450 N. Elm Street, West Carrollton, Ohio, 45449 (the "Subject Property").

**12.** Defendant, Episcopal Retirement Services, is an Ohio corporation. Episcopal Retirement Services maintains its principal place of business in Cincinnati, Ohio. Defendant manages and operates the Subject Property at 450 N. Elm Street, West Carrollton, Ohio, 45449.

**13.** In acting or omitting to act as alleged herein, each Defendant acted through its employees, officers, and/or agents and is liable on the basis of the acts and omissions of its employees,

officers, and/or agents.

14. In acting or omitting to act as alleged herein, each employee, officer, or agent of each Defendant was acting in the course and scope of his or her actual or apparent authority pursuant to such agencies, or the alleged acts or omissions of each employee or officer as agent was subsequently ratified and adopted by one or more Defendants as principal.

## JURISDICTION AND VENUE

15. Jurisdiction is appropriate in that this civil action is brought under the federal Fair Housing Act ("FHA") and federal Fair Housing Amendments Act ("FHAA"), 42 U.S.C. §§ 3601, *et seq.* (collectively referred to as the "Fair Housing Act" or "FHA").

16. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the complaint raises important federal questions under the FHA.

17. This Court has supplemental jurisdiction over the related state law claims, Ohio Rev. Code §§ 4112.01, *et seq.* (the "Ohio Fair Housing Act"), and state tort law, under 28 U.S.C. § 1367, as the facts revolve around a central fact pattern and the claims in this case and controversy derive from a common nucleus of operative fact.

18. Defendants are subject to the jurisdiction of this Court as they are a "Person" under the Fair Housing Laws, and the acts described herein primarily occurred in Montgomery County, Ohio.

19. Defendant, Episcopal Retirement Services, conducts business in Ohio, including but not limited to: managing property, leasing property, and performing contractual obligations in Ohio.

20. Defendant, Canterbury Court Limited Partnership, conducts business in Ohio, including but not limited to: owning property, managing property, leasing property, and performing

contractual obligations in Ohio.

21. Venue is proper in this Court in that the discriminatory acts occurred primarily in Montgomery County, Ohio.

22. Therefore, Plaintiff respectfully requests that this honorable Court take jurisdiction of this Complaint and award such relief as is appropriate under the Fair Housing Laws and state tort law.

## FACTS

23. Plaintiff restates and realleges each and every allegation in Paragraphs 1 through 22 as if fully restated herein.

24. Plaintiff began receiving complaints in December 2022 regarding disability discrimination occurring at an apartment complex named Canterbury Court, located in West Carrollton, Ohio.

25. Canterbury Court is owned by Defendant, Canterbury Court Limited Partnership, and Managed by Defendant, Episcopal Retirement Services.

26. Upon information and belief, Canterbury Court is a HUD-sponsored community offering age and income-qualified seniors and adults with mobility impairments a choice among 150 one-bedroom and two-bedroom apartments.

27. MVFHC launched an investigation after receiving several complaints from concerned and disabled Canterbury Court residents, including that Defendants were not processing requests for bathroom renovations, walk-in showers, transfer requests, and automatic door openers.

28. During the investigation, MVFHC determined that Defendants were utilizing a quota system with regards to reasonable modification requests, namely the installation of walk-in showers.

29. Plaintiff determined that tenants were automatically added to an arbitrary waiting list when

they requested a walk-in shower rather than Defendants thoroughly assessing and evaluating the request individually as required by the Fair Housing Laws.

30. The quota system ensured that residents did not receive independent consideration for every reasonable accommodation or modification request, but rather they were left merely to an arbitrary system of limiting the number of modifications, and more specifically, shower modifications, that would be granted each year.

31. The initial quota called for only two walk-in shower modifications per year. Later, this was revised to seven modifications a year. In sum, a resident with severe disabilities in dire need of a walk-in shower, but number eight or lower on the waiting list, would be subjected to a wait of over a year to be able to fully use and enjoy their dwelling.

32. During this time, Defendants were also refusing other reasonable shower modifications that would be completed and paid for by outside agencies.

33. By failing to perform an independent assessment of each and every accommodation and modification request, Defendants violated the Fair Housing Laws.

34. During the course of the investigation, MVFHC further determined that Defendants would not grant the installation of a shower door for a disabled resident because a manager stated that it would cost more, and if granted, then other residents would also want a shower door.

35. MVFHC further determined that Defendants were not considering reasonable modification requests for automatic door openers at a certain point of ingress and egress to the building.

36. Defendants also required that residents with readily apparent disabilities (*e.g.,* the use of a wheelchair for a mobility impairment) provide an overly restrictive doctor's verification form of the need for an automatic door opener. This requirement alone violates federal law and serves as an additional barrier for disabled residents, and particularly residents who do not

have a regular medical doctor, from fully using and enjoying the premises.

37. MVFHC's investigation also concluded that Defendants unreasonably delayed in responding to reasonable accommodation and modification requests. For example, one resident requested an automatic door opener and walk-in shower and merely received an acknowledgement letter for the walk-in shower and a series of denials for the door opener. That resident went nearly a year without an answer to the accommodation or modification requests. Such delay was in effect a denial.

38. The MVFHC investigation determined that residents routinely requested accommodations or modifications for several months, and oftentimes up to a year, until a decision was made regarding the request for walk-in showers, grab bars in the shower, automatic door openers, shower doors, and transfers to more accessible units.

39. During the investigation, MVFHC discovered that Defendants were pressuring and intimidating residents to drop certain requests in exchange for alternatives that did not meet the needs of the residents at issue, or to withdraw their requests entirely. Multiple residents expressed fear of losing their housing and relented to the intense pressure that Defendants subjected them to during the interactive process.

40. MVFHC conducted a direct mailing campaign at the Subject Property and spoke to several residents who were concerned with coming forward about their accommodation and modification requests because of the intimidation that Defendants' employees had subjected them to during the interactive process.

41. During the investigation, MVFHC conducted testing of Defendants' property. Fair housing testing is a controlled process whereby MVFHC is able to gather information about the quality, quantity, and content of information provided to potential renters based on protected

classes, including disability, under the Fair Housing Laws.

**MVFHC Test #1**

42. The test was conducted through phone calls and emails in July and August 2023.

43. The tester contacted Canterbury Court and notified management of their readily apparent disability and the use of a motorized wheelchair.

44. The tester requested a reasonable modification of a roll-in shower after disclosing their readily apparent disability. The tester offered that she could cover the costs, despite Defendants' legal requirement to cover such costs as a HUD-sponsored property.

45. The manager failed to grant the request and did not volunteer that Defendants were legally required to cover the cost of the shower modification.

46. Despite this, the tester requested the required paperwork to move forward with applying and requesting the modification.

47. Defendants submitted an application and reasonable accommodation form ("RA Verification Form") to the tester.

48. The submission of this form is one example of Defendants' overly restrictive leasing policy in that no form is required under the Fair Housing Laws when the disability and disability-related need are readily apparent.

49. Defendants utilize this form to effectively deter residents from making such accommodation and modification requests during the leasing process.

**MVFHC Test #2**

50. The same tester also explained they were obtaining a new service dog and requested the paperwork that needed to be completed for that accommodation request.

51. Canterbury Court's community manager, Jan Velkoff, stated in a phone call that: "We just

have to have that in writing from the doctor."

52. The tester was eventually sent a medical verification form specifically for assistance animals (the "Animal RA Form").

53. Both forms identified above ask if the healthcare provider is licensed in the state of Ohio, whether they would be willing to testify in a court of law regarding the information provided on the form, and states the disability needs to be permanent or continuing to be protected under the Fair Housing Act, which is untrue.

54. The Animal RA Form asks the provider to assess whether a smaller animal may similarly meet the person's needs as a larger animal. A smaller animal is in no way required under the Fair Housing Laws, and such a limit or restriction on the breed and size of an animal is discriminatory because it fails to consider the animal's conduct or resident's need of such animal as an accommodation.

55. Defendants' application further explains that applicants or residents in need of units with more accessible features need to have a 'verification of need for accessible unit' form completed by a medical practitioner, even though for many residents and prospective applicants that would benefit from those features, their disability and disability-related need is readily apparent.

56. Additionally, Defendants' requirement of verification by a "medical practitioner" is discriminatory and overly restrictive. Any reliable third party can verify a disability under the Fair Housing Laws, including a doctor, a social worker, a case manager, a family member, a coworker, a civil rights organization representing the client, a peer support group, or a non-medical service agency, among others. By requiring a doctor's verification, Canterbury Court violated the Fair Housing Laws.

57. The manager additionally stressed that the tester had to be over the age of sixty-two to be eligible for residency, even after they disclosed a physical disability. The statement was discriminatory limitation or preference and otherwise made housing unavailable on the basis of disability.

**TESTING EVIDENCE**

58. Testing evidence indicates that Defendants have companywide policies, procedures, and forms, which prevent prospective applicants and current residents with disabilities from making reasonable accommodation or reasonable modification requests and receiving individualized consideration of such requests.

59. Testing evidence further demonstrates that Defendants intentionally discriminate against residents and prospective residents on the basis of disability in the terms and conditions of renting a unit by (1) failing to communicate accurate information; (2) failing to cover the costs of modifications as required by a HUD-sponsored property; and (3) failing to grant reasonable accommodation and modification requests in a reasonable timeframe.

60. Defendants' conduct, policies, and procedures for processing reasonable accommodation and modification requests violate the Fair Housing Laws.

61. Additionally, Defendants negligently trained and supervised its staff regarding processing reasonable accommodation and modification requests. Such failure to train employees, staff, and their representatives resulted in several tenants waiting over a year to have their accommodation and modifications requests processed. Such delay is in effect a denial.

62. The actions and policies of Defendants forced MVFHC to divert its scarce resources to counter the discriminatory treatment experienced by Canterbury Court residents and frustrated its mission to ensure fair and equal housing opportunities.

**INJURY TO PLAINTIFFS**

63. Plaintiff requested, and assisted residents, with reasonable accommodations and modifications on multiple occasions.

64. Defendants' statements as described herein were discriminatory and indicated a preference for limiting the number of modifications the Subject Property allowed each year.

65. Defendants' actions and policies of (1) creating an arbitrary quota system for modifications; (2) delaying in responding to reasonable accommodation and modification requests; (3) failing to install walk-in showers, grab bars, shower doors, and automatic door openers; (4) communicating false information to create artificial barriers for residents to request reasonable accommodations and modifications; and (5) intimidating residents into accepting less satisfactory alternatives resulting in residents losing the ability to fully use and enjoy the premises, violate the Fair Housing Laws.

66. Defendants' unlawful conduct, policies, and practices frustrated and impaired MVFHC's mission and purpose, forced them to drain their limited and scarce resources, and interfered with their ability to operate.

67. Defendants' discriminatory conduct and policies forced and required Plaintiff to engage in numerous activities to identify and counteract the Defendants' unlawful conduct, policies, and practices, in order to protect residents from unlawful housing discrimination.

68. Such activities included: interviewing residents; conducting research about Defendants' properties and policies; initiating a direct mailing campaign; testing Defendants' property; advising residents of their rights under the Fair Housing Laws; and negotiating with Defendants' representatives.

69. Defendants' actions, as described herein, limit housing choice for people with disabilities

in violation of the Fair Housing Laws.

70. MVFHC will continue to divert its scarce resources and have its mission frustrated until Defendants' discriminatory conduct ceases and the harm caused by Defendants on residents and prospective residents are remedied and resolved.

71. Defendants' actions and policies as described herein have perceptibly impaired MVFHC's ability to pursue its mission because it diverted significant resources into the investigation of Canterbury Court for over a year.

72. Plaintiff's diversion of time and resources to address Defendants' discriminatory conduct has forced MVFHC to suspend or curtail other projects that would have furthered its mission, including but not limited to: conducting training sessions with housing providers, investigating other housing providers, testing other properties, missing speaking engagements in the community, and delaying its Analysis of Impediments to Fair Housing Study in Montgomery County, Ohio.

73. MVFHC has suffered and continues to suffer direct, concrete, and continuing injuries as a result of the discriminatory conduct, practices, and policies implemented by Defendants and endorsed by their staff and representatives.

74. As a result of Defendants' discriminatory conduct as described herein, Plaintiff now brings this Complaint for declaratory, injunctive, and monetary relief, in an amount in excess of $25,000.00, to be determined at trial.

## CAUSES OF ACTION

### COUNT I: VIOLATION OF THE FAIR HOUSING ACT OF 1968, as amended.

### 42 U.S.C. § 3601, *et seq.* (Disability Discrimination)

75. Plaintiff restates and realleges each and every allegation in Paragraphs 1 through 74 as if

fully restated herein.

76. Plaintiff's requests for reasonable accommodations and modifications were both reasonable and necessary.

77. Defendants' conduct as described in this Complaint constitutes a refusal to make reasonable accommodations in rules, policies, practices, or services when such an accommodation may be necessary to afford a person with a disability an opportunity to use and enjoy a dwelling in violation of 42 U.S.C §§ 3604(f)(1); 3604(f)(2); and 3604(f)(3)(B).

78. Defendants' conduct as described in this Complaint constitutes discrimination in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of the disability of a person residing in or intending to reside in a dwelling, including through the refusal to make reasonable accommodations, in violation of 42 U.S.C. §§ 3604(f)(1); 3604(f)(2); and 3604(f)(3)(B).

79. Defendants' conduct as described in this Complaint constitutes a refusal to permit reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises, in violation of 42 U.S.C. §§ 3604(f)(1); 3604(f)(2); and 3604(f)(3)(A).

80. Defendants' conduct as described in this Complaint constitutes discriminatory statements that indicate a preference, limitation, or discrimination based on disability in violation of 42 U.S.C. § 3604(c).

81. Defendants' conduct as described in this Complaint constitutes unlawful coercion, intimidation, and interference with the rights of Canterbury Court residents, in violation of 42 U.S.C. § 3617.

82. As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff has

suffered damages and is an aggrieved person, as defined in 42 U.S.C. § 3602(i).

83. There are no valid or legitimate reasons for Defendants': (1) arbitrary quota system for modification requests; (2) delaying in responding to reasonable accommodation and modification requests; (3) failing to install walk-in showers, grab bars, and automatic door openers; (4) communicating false information to create an artificial barrier for disabled residents and applications to request accommodations and modifications; and (5) intimidating residents into accepting less satisfactory alternatives resulting in residents losing the ability to fully use and enjoy the premises.

84. Wherefore, Plaintiff requests compensatory and punitive damages in excess of $25,000, together with costs and reasonable attorney fees, in an amount to be determined at trial.

## COUNT II: VIOLATION OF THE OHIO CIVIL RIGHTS ACT

## OHIO REV. CODE § 4112.02(H), *et seq.* (Disability Discrimination)

85. Plaintiff restates and realleges each and every allegation in paragraphs 1 through 84 as if fully restated herein.

86. Plaintiff's requests for reasonable accommodations and modifications were both reasonable and necessary.

87. Defendants' conduct, described in this complaint, constitutes a refusal to make reasonable accommodations and modifications in rules, policies, practices, or services when necessary to afford a person with a disability equal opportunity to use and enjoy a dwelling, in violation of Ohio Rev. Code §§ 4112.02(H)(15) and 4112.02(H)(19).

88. Defendants' conduct in this Complaint constitutes discriminatory statements that indicate any preference, limitation, specification, or discrimination based on disability with respect to a housing accommodation, in violation of Ohio Revised Code § 4112.02(H)(7).

89. Defendants' conduct, as described in this Complaint constitutes discrimination in the terms, conditions, or privileges of the rental of dwellings, or in the provision of services or facilities in connection therewith because of disability, in violation of Ohio Rev. Code § 4112.02(H)(16).

90. Defendants' conduct, as described in this Complaint, constitutes intimidation and interference with fair housing rights, in violation of Ohio Rev. Code § 4112.02(H)(12).

91. As a direct, proximate, and foreseeable result of Defendants' discriminatory conduct and policies, Plaintiff has suffered actual and concrete damages and is an aggrieved person, as defined in Ohio Rev. Code § 4112.051.

92. There are no valid or legitimate reasons for Defendants': (1) arbitrary quota system for modification requests; (2) delaying in responding to reasonable accommodation and modification requests; (3) failing to install walk-in showers, grab bars, and automatic door openers; (4) communicating false information to create an artificial barrier for disabled residents and applications to request accommodations and modifications; and (5) intimidating residents into accepting less satisfactory alternatives resulting in residents losing the ability to fully use and enjoy the premises.

93. Defendants frustrated the mission of the MVFHC and forced them to divert their scarce and limited resources to remedy the discriminatory conduct of Defendants as referenced in this Complaint.

94. Wherefore, Plaintiff requests compensatory and punitive damages in excess of $25,000, plus costs and reasonable attorney fees, in an amount to be determined at trial.

## COUNT III – NEGLIGENT TRAINING AND SUPERVISION

95. Plaintiffs reincorporate and reallege each and every allegation contained in Paragraphs 1

through 94 as if fully restated herein.

96. Defendants owed a duty to train and supervise its employees, agents, and staff, on best leasing practices, company policies, and responding to reasonable accommodation and modification requests under the Fair Housing Laws.

97. Defendants breached that duty of care by failing to provide fair housing training to its employees, agents, and staff.

98. Defendants further breached their duty of care failing to supervise their property managers and leasing agents during the interactive process.

99. As a direct and proximate result of Defendants' negligent training and supervision, Plaintiff suffered harm in the form of unfair and discriminatory treatment during the initial inquiry and delay in the accommodation and modification requests.

100. Defendants further breached their duty of care by failing to implement standard policies or procedures for processing reasonable accommodation and modification requests which leads to differential treatment in processing requests for accommodations and modifications.

101. Wherefore, Plaintiff requests compensatory and punitive damages in excess of $25,000, plus costs and reasonable attorney fees, in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, due to Defendants' discriminatory conduct and policies as described herein, Plaintiff respectfully requests that this Court grant judgment in its favor, and against Defendants, as follows:

A. Declaring that Defendants' actions violate the federal Fair Housing Act, 42 U.S.C. §§ 3601, *et seq*., and Ohio Rev. Code §§ 4112.02, *et seq*.

**B.** Permanently enjoining Defendants from engaging in the conduct described herein and directing Defendants to take all affirmative steps necessary to remedy the effects of the conduct described herein and to prevent additional instances of such conduct or similar conduct from occurring in the future.

**C.** Awarding all compensatory damages to Plaintiffs in an amount to be determined that would fully compensate Plaintiffs for the injuries caused by the conduct of Defendants.

**D.** Awarding punitive damages to Plaintiffs in an amount to be determined by a jury that would punish Defendants for the willful, wanton, and reckless conduct that would effectively deter similar conduct in the future.

**E.** Awarding reasonable attorneys' fees and costs as permitted by the Fair Housing Laws; and

**F.** Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury on all issues triable as of right.

Respectfully submitted,

*/s/ C. Jacob Davis*

_____
C. Jacob Davis (#0101745)
Nalls Davis
33 White Allen Avenue
Dayton, Ohio 45405
Phone: (937) 813-3003
Fax: (937) 200-7285
Jacob.Davis@nallslaw.com
*Attorney for Plaintiff, The Miami Valley*
*Fair Housing Center, Inc.*

**Dated:** April 19, 2024

17

**CERTIFICATE OF SERVICE**

I hereby certify that service of the Summons and Complaint is being made upon Defendants as required by the Federal Rules of Civil Procedure, via certified mail return receipt requested, or another form of proper service at the addresses listed in the caption of this Complaint.

Respectfully,

*/s/ C. Jacob Davis*
_____
C. Jacob Davis (#0101745)
*Attorney for Plaintiff*